Chancellor Rutledge
afterwards delivered the decree of the court.
The complainant’s bill states, that he as the agent of a Mrs. Kelsal now deceased, in July, 1797, entered into a parol agreement with Dr. W. Calder, now also deceased, for the purchase of a tract of land on the terms and conditions in bill set forth. It states further, as a part performance of the agreement, that the sum agreed to be paid down was deposited with the complainant’s agent, to be paid to Dr. Calder, when he should execute and deliver the titles to Mrs. Kelsal. Also, that Dr. Calder assented to Mrs. K’s taking possession of the land, (which she did) and preparing for the next crop, if she thought proper.— That Dr. Calder went soon afterwards to Charleston, had titles drawn, and shortly after he returned home, (viz. in the month of August,) and died without compleating his contract. . The bill therefore prays a specific performance by defendant as the representative of Dr. Calder.
The defendant in his answer says, he is entirely ignorant of any agreement made by Dr. Calder with complainant as agent of Mrs. Kelsal for the land, and therefore can neither admit or deny the charges in the bill. That being at any rate only a parol agreement, it is void by the statute of frauds. The defendant is ignorant of Dr. Calder’s agreeing to Mrs. Kelsal’s entering on the land previous to his making titles thereto : but has been informed that neither she nor her agent entered thereon till some dme after Dr. Calder’s death. He does not admit the de *187 posit of the money as a part performance, and denies that it was ever tendered to him, or that complainant offered to fulfil his contract, till a considerable time after defendant arrived in this country. The defendant not having confessed the agreement, nor admitted the allegations of part performance, as stated in bill, either of which would have been sufficient to induce the court to decree a specific execution of the agreement, (because where defendant confesses the agreement,' or' acknowledges part performance, there is certainly no danger of fraud or perjury, which were .the objects contemplated by the statute) it was necessary for the complainant to support his case by proof. This he has attempted to do by the adduction of parol evidence as to the part performance; first, by payment; next, by delivering possession of the land, & thereby to take the case out of the statute. He also attempted to prove by pa-rol evidence, the contents of a letter written to him by Dr. Calder; but that not being admitted, the counsel on both sides went into the cause and argued the. case very fully. The complainant immediately after the first hearing, filed a supplemental bill, wherein he recites the letter alleged to have been written by Dr. Calder to complainant, and calls for an answer from the defendant, whether he has not seen such a letter in Dr. Calder’s hand writing. Defendant by his answer acknowledges that the complainant had shewn him a letter which he believed to be in the handwriting of his brother, though he had not seen or corresponded with him for many years. The letter in substance is to inform complainant that all the writings for the land he had bought were ready, and the sponer he came and settled the better ; and desired Mrs. Kelsal should go with complainant, and take her security. with her. The parol téstimony of Mr. Fickling was produced to, prove that he had seen the letter, and had a conversation with Dr. Calder about the sale of land, and giving possession to complainant ; but he does not positively swear that Dr. Calder told him that he had given possession to complainant, nor does he know if Dr. Calder was present when complain *188 ant took possession, or that he gave complainant authority to take possession.
Mr. Whaley on the part of defendant, swore that Dr. Calder on his way to Charleston, in August, 1797, slept at his house, and informed him that he was coming to town to see Mr. W. Simmons, and to learn from him whether he had declined the purchase of the land now in contest: complainant having informed Dr. Calder that Simmons had declined it : that if Simmons had not told complainant so, he should have the land if he thought proper: that Whaley was with Dr. Calder after his return, during the greater part of his illness, and whin hv died: he never saw either complainant or Fielding there, and does not believe they saw the doctor after his return.
Mr. Simmons swears that he not only had not made .such a declaration to complainant, but that he had not .seen nor ever heard of complainant. The cause has been re-ai-gued on the supplemental bill and letter, and the arguments ought to have been confined simply to the point, whether the letter written by Dr. Calder to complainant varied the case, without going into parol proof of possession. In determining on this case, we must reverse the .order of things, and take up the last question first, by disposing of the letter set forth in the .supplemental bill, and determining whether it varies the case.' According to adjudged cases, it is clearly held that in order to make a letter evidence of an agreement for the sale of lands to take •it out .of the statute, it ought distinctly to set forth the terms of the agreement, or at least refer to some written instrument in which the terms are .set forth, and that the party accepted such terms. Does the letter alluded to specify any thing ? It does not. It only informs complainant that the deeds were ready when Sirs. Kelsal was disposed to perform her part. There was no obligation on her to do it. No evidence has been offered to shew even that she authorized complainant to negotiate the business. There was therefore no mutuality of contract.— That letter then, though the contents are admitted, does *189 not vary tbe case. As to the delivery of possession, there is no actual proof of it, for complainants own witness does not positively swear that Dr. Calder told him either that he had given or even authorized complainant to take possession. And from the evidence of Messrs. Whaley and Simmons, it is rather to be presumed that no possession was ever given or even authorized. The case therefore stands precisely on the same grounds it did upon the argument on the original bill and answer.
It is a singular case, and there is not one like it in the books, for the parties to the agreement, seller and purchaser, are both dead, and the person who now comes forward to claim a specific performance' of the agreement in his own right as the residuary legatee was the agent of the purchaser. It rests with him to make out such an agreement as best suits himself, and that too against a person who could not possibly know any thing of the transaction, being a total stranger in this country. We do not mean to charge complainant with suggesting in his bill any untruths ; but a case of this sort may occur, and it would be scarcely possible for a defendant circumstanced like the present, to controvert the facts, if parol evidence was to be admitted. If ever there was a case therefore in which the statute should be rigidly adhered to, and the party have the benefit of it in its greatest latitude, it is .the present.
, The judges of the court of Equity were formerly very astute in laying hold of circumstances, in order to enforce parol agreements, and to take them out of the statute, whereby it is problematical whether they have not done more injury than real good. For though by a strict adherence to the letter of the statute, a present inconvenience might have been sustained, the mischief would soon have worked its own cure, and the parties would have reduced their agreements to writing, agreeable to the directions of the law. There would not then have been so many cases on this subject, various in their circumstances, and the decisions on them (as has been observed by a very ingenious *190 writer) not immediately reconeileabie. The-modern adjudications however are corrective of the former; and we fjn¿ judges of the present day, declaring the bent of their minds strongly in favor of the wisdom of the statute, and against the cases that have intrenched upon- it, and accordingly framing their decisions conformable to the intention as well as the letter of the statute. The question now before the court we believe has never been fully discussed. The present decision will therefore establish a precedent, and with it the law on the subject. The numerous cases that were cited have been carefully reviewed, and aftev mature consideration of them, we are clearly of opinion, that in the case of parol agreement, not tinctured with fraud, if the defendant chooses to avail himself of the statute, it is not necessary that he should by answer confess or deny the agreement, the law having declared it void. Neither ought he to be compelled to confess or deny part performance of it, although charged in the bill. That to permit parol proof of a parol agreement, would be in effect to repeal the statute, and introduce all the mischief, inconvenience & uncertainty it intended to prevent, That to admit parol proof of part performance of a parol agreement would be equally improper, and is not warranted by any of the cases in the books; for it is clearly held that if the part performance alleged be possession of land or the payment of money, the complainant must prove delivery of possession in the first case, or receipt or written evidence of payment in the other, to entitle him to a specific execution of the agreement. All the parol testimony th&rcfore which has been adduced in the case to prove the parol agreement or the part performance of it, is made inadmissible and must be laid aside.
The case thus standing without proof on the part of corn-, pluinanp the facts of part performance, namely, payment of part of the purchase money and delivery of possession, not being admitted, but denied by the answer as fully and explicitly as defendant could do so,
The bill must be dismissed with costs.